UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

H&H LAUNDRY CORPORATION OF                 )
ORLANDO, INC., a Florida corporation,      )
                                           )
          PLAINTIFF,                       )
                                           )
vs.                                        )          CASE NO.:
                                           )           6:10-CV-938-ORL-31GJK
THELAUNDRYLIST.COM, INC.,                  )
                                           )
          DEFENDANT.                       )
_____  )

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, H&H LAUNDRY CORPORATION OF ORLANDO, INC. ("H&H Laundry"), a Florida corporation, by and through its undersigned counsel, hereby sues Defendant, THELAUNDRY LIST.COM, INC., a California corporation ("LaundryList"), and alleges the following:

### GENERAL ALLEGATIONS

1.      Plaintiff, H&H Laundry, is a Florida corporation with its principal place of business located in Orange County, Florida.

2.      Defendant, LaundryList, is, upon information and belief, a California corporation authorized to do business in Orange County, Florida.

3.      Defendant, LaundryList, is subject to the jurisdiction of the courts in the State of Florida, because the causes of action alleged herein arise in Orange County, Florida and it conducts and engages in business in the State of Florida.

4.      Plaintiff, H&H Laundry, wanted to purchase commercial laundry equipment in good operating condition for the purpose of providing commercial laundry services to various

1

businesses in the hospitality industry.   Plaintiff, H&H Laundry, expressed this desire to Defendant, LaundryList.

5.      Defendant, LaundryList, expressed its ability to supply Plaintiff, H&H Laundry, with the commercial laundry equipment it needed to operate a business for the desired purpose.

6.      On or about October 10, 2008, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that certain Invoice #6018M for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoice.

7.      On or about February 12, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that certain Invoice #6094M and Invoice #6095M, for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoices.

8.      On or about September 14, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that Invoice #6163MI and Invoice #6164MI for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoices.

9.      On or about October 15, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that Invoice #6206MI for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoice.

10.      On or about October 15, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that Invoice #6207MI for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoice.

11.      On or about October 15, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that certain Invoice #6208MI for freight associated with

shipping to Plaintiff the commercial laundry equipment described in the Invoices referenced in the preceding paragraphs of this Complaint.

12.   On or about October 16, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that Invoice #6217MI for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoice.

13.   On or about November 9, 2009, Plaintiff, H&H Laundry, and Defendant, LaundryList, agreed to and entered into that Invoice #6198PI for the sale and purchase of that certain commercial laundry equipment more particularly described in said Invoice.

14.   The Invoices referenced in the preceding Paragraphs are hereinafter collectively referred to as the "Invoices."  True and correct copies of the Invoices are attached hereto and incorporated herein by reference as Composite Exhibit "A."

15.   The items reflected on the Invoices and the sales prices are listed and itemized on a spread sheet provided by Defendant, LaundryList, to Plaintiff, H&H Laundry, which further states that the total sales price was $447,329.00.  A true and correct copy of the spread sheet is attached hereto and incorporated herein by reference as Exhibit "B."

16.   However, Defendant, LaundryList, has failed, refused, or neglected to send various items of commercial laundry equipment listed on the Invoices and have sent other items completely inoperable or requiring significant repair despite verbal and written communications attesting to their good working condition.

17.   On February 22, 2010, Plaintiff, H&H Laundry, forwarded written correspondence to Defendant, LaundryList, advising Defendant, LaundryList, of the various issues with the commercial laundry equipment and providing Defendant, LaundryList, with an

3

opportunity to resolve such issues.  A true and correct copy of Plaintiff's February 22, 2010 correspondence is attached hereto and incorporated herein by reference as Exhibit "C."

18.    All conditions precedent to the filing of this action have been performed, excused or waived.

19.    Plaintiff, H&H Laundry, has retained the undersigned attorneys and has agreed to pay said attorneys their reasonable attorneys' fees in this lawsuit.

## COUNT I – BREACH OF CONTRACT

20.    This is an action for damages for breach of contract, the amount of which exceeds $15,000.00, exclusive of attorneys' fees and costs.

21.    Plaintiff, H&H Laundry, readopts and realleges the allegations contained Paragraphs 1 through 19 of this Complaint.

22.    Despite having agreed to sell various items of commercial laundry equipment to Plaintiff, H&H Laundry, and having received payment for the same, Defendant, LaundryList, has failed, refused, or neglected to ship or have shipped several of the items to Plaintiff, H&H Laundry.

23.    Pursuant to Invoice #6163M, Plaintiff purchased from Defendant, LaundryList, a Pawnee 100HP Boiler for the sales price of $12,500.00.

24.    Defendant, LaundryList, has yet to ship the Pawnee 100HP Boiler to Plaintiff, despite several demands from Plaintiff.

25.    Pursuant to Invoice #6164M, Plaintiff purchased from Defendant, LaundryList, an Ipso 80lb. Open Pocket Washer Extractor for the sales price of $6,000.00.

26.    Defendant, LaundryList, has yet to ship the Ipso 80lb. Open Pocket Washer Extractor, despite several demands from Plaintiff.

27.     Pursuant to Invoice #6164M, Plaintiff purchased from Defendant, LaundryList, an Ipso 140lb. Open Pocket Washer Extractor for the sales price of $12,000.00.

28.     Defendant, LaundryList, has yet to ship the Ipso 140lb. Open Pocket Washer Extractor, despite several demands from Plaintiff.

29.     Pursuant to Invoice #6094M, Plaintiff purchased from Defendant, LaundryList, a Braun Omega 4-Lane Folder, for the sales price of $15,000.00.

30.     Defendant, LaundryList, has yet to ship the Braun Omega 4-Lane Folder Extractor, despite several demands from Plaintiff.

31.     Pursuant to Invoice #6095M, Plaintiff purchased from Defendant, LaundryList, two (2) Forenta Scissor Legger Presses for the sales price of $6,000.00.

32.     Defendant, LaundryList, has only shipped one of the two Forenta Scissor Legger Presses, despite several demands from Plaintiff.

33.     Pursuant to Invoice #6163MI, Plaintiff purchased from Defendant, LaundryList, a Braun 400lb. Top Side Loading Washing Extractor for the sales price of $6,000.00.

34.     Defendant, LaundryList, has yet to ship the Braun 400lb. Top Side Loading Washing Extractor, despite several demands from Plaintiff.

35.     Pursuant to Invoice #6018M, Plaintiff purchased from Defendant, LaundryList, a Milnor COSHA Loading Conveyor for the sales price of $5,000.00.

36.     Defendant, LaundryList, has yet to ship the Milnor COSHA Loading Conveyor, despite several demands from Plaintiff.

37.     Pursuant to Invoice #6093M, Plaintiff purchased from Defendant, LaundryList, a Colemac Steam Heated Garment Finishing Tunnel for the sales price of $14,500.00.

38. Defendant, LaundryList, has yet to ship the Colemac Steam Heated Garment Finishing Tunnel, despite several demands from Plaintiff.

39. Pursuant to Invoice #6094M, Plaintiff paid to Defendant, LaundryList, a sum of $20,000.00 for loading costs for the items referenced in Invoices #6094M and #6095M.

40. Defendant, LaundryList, has yet to load, or caused to be loaded, two of the fifteen items listed on Invoices #6094M and #6095M.  See ¶¶ 29 and 31.

41. Pursuant to Invoice #6208MI, Plaintiff paid to Defendant, Laundrylist, a sum of $38,329.00 for the costs associated for freight to Orlando for all items found in the Invoices.

42. Defendant, LaundryList, has yet to ship, or caused to be shipped, eight of the twenty-eight items listed on the Invoices.  See ¶¶ 23 through 37.

43. Plaintiff, H&H Laundry, and Defendant, LaundryList, are bound to the terms of the Invoices.

44. At all times material hereto, Plaintiff, H&H Laundry, has complied with its obligations to Defendant, LaundryList, pursuant to the Invoices.

45. However, Defendant, LaundryList, has materially breached the Invoices by failing to provide those aforesaid items of commercial laundry equipment.

46. As a result of Defendant's, LaundryList, breach of contract, Plaintiff, H&H Laundry, has suffered actual damages of $74,000.00 for items that were paid for but never sent, $2,666.67 for loading costs associated with items never loaded, and $10,951.14 for freight costs associated with items never shipped, for a total of $87,617.81.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Court enter judgment against Defendant, LaundryList, for actual damages, including prejudgment interest, court costs and such other and further relief as this Court deems just and proper.

6

## COUNT II – UNJUST ENRICHMENT

47.     This is an action for damages for unjust enrichment, the amount of which exceeds $15,000.00, exclusive of attorney's fees and costs.

48.     Plaintiff, H&H Laundry, readopts and realleges the allegations contained Paragraphs 1 through 19, and Paragraphs 20 through 46 of this Complaint.

49.     Plaintiff, H&H Laundry, has remitted payment to Defendant, LaundryList, in the amount of $447,329.00, pursuant to the Invoices.

50.     Defendant, LaundryList, accepted said payments but has failed to ship or have shipped several items of commercial laundry equipment contracted for purchase.

51.     Despite not fulfilling its obligations under the Invoices, Defendant, LaundryList, has retained the sum of $447,329.00.

52.     It would be inequitable for Defendant, LaundryList, to retain the benefits conferred upon it by Plaintiff, H&H Laundry, in light of the fact that Defendant, LaundryList, has not shipped or caused to be shipped several items of commercial laundry equipment that were contracted for purchase.

53.     As a result of Defendant's, LaundryLIst, actions, Plaintiff, H&H Laundry, has sustained damages in the amount of $74,000.00 for items that were paid for but never sent, $2,666.67 for loading costs associated with items never loaded, and $10,951.14 for freight costs associated with  items never shipped, for a total of $87,617.81.

54.     WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Court enter judgment against Defendant, LaundryList, for actual damages, including prejudgment interest, court costs and such other and further relief as this Court deems just and proper.

## COUNT III – DECEPTIVE AND UNFAIR TRADE PRACTICES

55. This is an action for damages for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq., the amount of which exceeds $15,000.00, exclusive of attorney's fees and costs.

56. Plaintiff, H&H Laundry, readopts and realleges the allegations contained Paragraphs 1 through 19 of this Complaint.

57. Plaintiff, H&H Laundry, and Defendant, LaundryList, negotiated the sale of the items memorialized in the Invoices with the understanding that the items were used.

58. However, Defendant, LaundryList, through both verbal and written communications, assured Plaintiff, H&H Laundry, that the items, while used, were in good and operable condition or were otherwise inspected by Defendant, LaundryList. A true and correct copy of an electronic mail correspondence from Defendant, LaundryList, dated February 23, 2009 is attached hereto and incorporated herein by reference as Exhibit "D."

59. On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Braun Alpha Feeder was in "very good running condition at the time of plant shut down."

60. Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Braun Alpha Feeder for $12,000.00, pursuant to Invoice #6094M. However, the Braun Alpha Feeder was inoperable at the time it was received by Plaintiff, H&H Laundry, and Plaintiff had to spend $5,000.00 replacing all electrical parts, hoses, fuses, wiring, and spreader clamps.

61. On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Braun Delta 3-Roll 32" Stream Heated Ironer was in "very good running condition at the time of plant shut down."

62. Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Braun Delta 3-Roll 32" Stream Heated Ironer for $40,000.00, pursuant to Invoice #6094M. However, the Braun Delta 3-Roll 32" Stream Heated Ironer was inoperable at the time it was received by Plaintiff, H&H Laundry, and Plaintiff, H&H Laundry, had to spend $6,000.00 replacing all switches, wiring, chest cleaner, vacuum line, flanges, and gasket hoses.

63. On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that it had four (4) Braun Small Piece Folders, Rear Discharge Meterwide, that were in "very nice shape."

64. Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased four (4) Braun Small Piece Folders Rear Discharge Meterwide for $40,000.00, pursuant to Invoice #6094M. However, two of the Braun Small Piece Folders, Rear Discharge Meterwide, were inoperable at the time they was received by Plaintiff, H&H Laundry, and Plaintiff, H&H Laundry, had to spend $5,000.00 replacing wiring and other parts, and welding sprockets.

65. On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Forenta Puffer Press "has seen normal usage with no excessive wear and tear," and "was operational at time of disconnect."

66. Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Forenta Puffer Press for $1,000.00, pursuant to Invoice #6095M. However, the

9

Forenta Puffer Press required significant repair at the time it was received by Plaintiff, H&H Laundry.

67.    On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Forenta Sleever Press "has seen normal usage with no excessive wear and tear," and "was operational at time of disconnect."

68.    Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Forenta Sleever Press for $2,500.00, pursuant to Invoice #6095M.  However, the Forenta Sleever Press required significant repair at the time it was received by Plaintiff, H&H Laundry.

69.    On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Forenta Collar and Cuff Press "has seen normal usage with no excessive wear and tear," and "was operational at time of disconnect."

70.    Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Forenta Collar and Cuff Press for $1,500.00, pursuant to Invoice #6095M. However, the Forenta Collar and Cuff Press required significant repair at the time it was received by Plaintiff, H&H Laundry.

71.    On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Forenta Pants Topper "has seen normal usage with no excessive wear and tear," and "was operational at time of disconnect."

72.    Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Forenta Pants Topper for $1,000.00, pursuant to Invoice #6095M.  However, the Forenta Pants Topper required significant repair at the time it was received by Plaintiff, H&H Laundry.

10

73.     On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a Forenta Auto Double Buck Press "has seen normal usage with no excessive wear and tear," and "was operational at time of disconnect."

74.     Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Forenta Auto Double Buck Press for $10,000.00, pursuant to Invoice #6095M. However, the Forenta Auto Double Buck Press required significant repair at the time it was received by Plaintiff, H&H Laundry.

75.     On February 23, 2009, Defendant, LaundryList, represented to Plaintiff, H&H Laundry, that a 1989 Milnor 11-Module 110lb. Capacity CBW System with 2-Stage Press, 2-Cake Shuttle and (4) Gas Heated Dryers ("Milnor Tunnel") "came out of a hospital cooperative laundry in Atlanta," and that it was "inspected at our [Defendant's, LaundryList] facility in Atlanta."

76.     Defendant, LaundryList, further stated that the Milnor Tunnel had been personally inspected by Brian Cohen and Scott Beerer, who "has been in the industry for about 18 years and was the former Western US Service Tech for Braun."

77.     Based on the representations of Defendant, LaundryList, Plaintiff, H&H Laundry, purchased the Milnor Tunnel for $79,000.00, pursuant to Invoice #6018M, and the "Rigging and Setting in Place of Milnor Tunnel" for $35,500.00, pursuant to Invoice #6207MI.  However, the Milnor Tunnel was inoperable at the time it was received by Plaintiff, H&H Laundry.

78.     Matthew LaForce, who was recommended by Defendant, LaundryList, to perform the installation of the Milnor Tunnel, inspected the item and informed Plaintiff, H&H Laundry, that the Milnor Tunnel required significant repair in order to be made operable.

11

79. Matthew Laforce recommended to Plaintiff, H&H Laundry, that the Milnor Tunnel required a complete rewiring, reconfiguration of the CBW System, and reconnection to the CBW system, flatwork, boiler, and compressor.

80. Plaintiff, H&H Laundry, had to spend $92,000.00 on repairs to the Milnor Tunnel, but despite such efforts, the Milnor Tunnel still remains inoperable.

81. Pursuant to Invoice #6198PI, Plaintiff purchased from Defendant, LaundryList, a Sellars Boiler for the sales price of $12,500.00.

82. Unlike other items listed on the Invoices, the Sellars Boiler did not have any conspicuous disclaimer describing the equipment as being "Used/As is/Where is."

83. However, despite not having been informed of the non-functioning condition of the Sellars Boiler, Plaintiff was required to spend $2,000.00 replacing flanges and duct work that was cut from the Sellars Boiler in order for it to be made operable.

84. Plaintiff, H&H Laundry, is a "consumer" as defined in Fla. Stat. § 501.203(7).

85. Defendant, LaundryList, is engaged in "trade or commerce" as defined in Fla. Stat. § 501.203(8).

86. Plaintiff, H&H Laundry, has never been engaged in the business of selling used commercial laundry equipment.

87. In engaging in the conduct described in Paragraphs 53 through 73, Defendant, LaundryList committed unfair and deceptive acts or practices in the conduct of its trade or commerce; specifically, the sale of the following:

    a. Braun Alpha Feeder;

    b. Braun Delta 3-Roll 32" Stream Heated Ironer ;

    c. Braun Small Piece Folder Rear Discharge Meterwide ;

12

    d.   Forenta Puffer Press ;

    e.   Forenta Sleever Press;

    f.   Forenta Collar and Cuff Press;

    g.   Forenta Pants Topper;

    h.   Forenta Auto Double Buck Press;

    i.   Milnor Tunnel; and

    j.   Sellars Boiler

88.    Defendant, LaundryList, knew or should have known that the aforesaid items were inoperable or required significant repair or that it had neither inspected, nor caused to be inspected, such items, and that therefore, the commercial laundry equipment could not be used for the purposes for which Plaintiff, H&H Laundry, bought them without substantial further expenditure by Plaintiff, H&H Laundry.

89.    Defendant's, LaundryList, act is one that is likely to mislead consumers such as Plaintiff, H&H Laundry.

90.    Plaintiff, H&H Laundry, has attempted to minimize its losses by attempting to repair the items at its own expense, requesting a refund of its money, or asking that Defendant, LaundryList, exchange the items for comparable items in good working condition.

91.    As a result of Defendant's, LaundryList, unlawful conduct, Plaintiff, H&H Laundry, have suffered actual damages of $291,500.00 for items that were paid for but inoperable, $35,500.00 for the rigging and installation of the Milnor Tunnel, and an additional $110,000.00 for amounts expended trying to repair such items, for a total of $437,000.00, which were proximately caused by Defendant's, LaundryList, violations of the Florida Deceptive and Unfair Trade Practices Act.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Court enter judgment against Defendant, LaundryList, for actual damages, reasonable attorneys' fees and cost of suit pursuant to Fla. Stat. § 501.211(2), and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, H&H Laundry, by and through its undersigned counsel, pursuant to Rule 38(b), Federal Rules of Civil Procedure, hereby demands a trial by jury on all issues so triable.

Dated this 28th day of September, 2010.

*/s/ John L. Di Masi*
John L. Di Masi, Esquire
Trial Counsel
Fla. Bar No.: 0915602
Law Offices of John L. Di Masi, P.A.
801 N. Orange Ave., Suite 500
Orlando, Florida 32801
Ph: (407) 839-3383
Fx: (407) 839-3384
Email: jdimasi@orlando-law.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 28, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

David Wood, Esquire
Suzanne Liotta, Esquire
Ruden, McClosky
420 S. Orange Ave., Ste. 920
Orlando, Florida 32801

*/s/ John L. Di Masi*
John L. Di Masi, Esquire

14